Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

FILED ⑤

NOV 06 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

# UNITED STATES DISTRICT COURT

for the

Northern District of California ▾

Oakland Division

DOUGLAS E. ROBINSON

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.*
*If the names of all the plaintiffs cannot fit in the space above,*
*please write "see attached" in the space and attach an additional*
*page with the full list of names.)*

**-v-**

MICHAEL J. RIGAS, Acting Director
United States Office of Personnel Management

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the*
*names of all the defendants cannot fit in the space above, please*
*write "see attached" in the space and attach an additional page*
*with the full list of names.)*

Case No. **C20-07907 JSC**

*(to be filled in by the Clerk's Office)*

ADR

Jury Trial: *(check one)* ☑Yes ☐No

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### I.     The Parties to This Complaint

#### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Douglas E. Robinson |
| Street Address | 3549 Ponderosa Trail |
| City and County | Pinole, Contra Costa |
| State and Zip Code | California 94564 |
| Telephone Number | 310-681-3474 |
| E-mail Address | dtangoking@gmail.com |

#### B.     The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Defendant No. 1

| | |
|---|---|
| Name | Michael J. Rigas, U.S. Office of Personnel Management |
| Job or Title *(if known)* | Acting Director |
| Street Address | 1900 E Street, NW |
| City and County | Washington, DC |
| State and Zip Code | 20415 |
| Telephone Number | (202) 606-1000 |
| E-mail Address *(if known)* | opmexecsec@opm.gov |

Defendant No. 2

| | |
|---|---|
| Name | DOES 1 to 10 |
| Job or Title *(if known)* | |
| Street Address | 1900 E. Street, NW |
| City and County | Washington, DC |
| State and Zip Code | 20415 |
| Telephone Number | (202) 606-1000 |
| E-mail Address *(if known)* | opmexecsec@opm.gov |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

### C.   Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | U.S. Office of Personnel Management |
| Street Address | 3549 Ponderosa Trail (Full-Time Teleworker) |
| City and County | Pinole, Contra Costa |
| State and Zip Code | California 94564 |
| Telephone Number | (310) 681-3474 |

## II.   Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☑    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑    Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐    Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑    Other federal law *(specify the federal law)*:

Equal Pay Act, as codified at 29 U.S.C. §206

☐    Relevant state law *(specify, if known)*:

☐    Relevant city or county law *(specify, if known)*:

Page 3 of 6

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

## III.    Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.    The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☐ Failure to hire me.
- ☐ Termination of my employment.
- ☑ Failure to promote me.
- ☐ Failure to accommodate my disability.
- ☑ Unequal terms and conditions of my employment.
- ☑ Retaliation.
- ☑ Other acts *(specify)*:    See Attached Statement

*(Note:  Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.    It is my best recollection that the alleged discriminatory acts occurred on date(s)

October 31, 2011 through Fiscal Year 2019

C.    I believe that defendant(s) *(check one)*:

- ☐ is/are still committing these acts against me.
- ☑ is/are not still committing these acts against me.

D.    Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- ☑ race    Black or African-American
- ☐ color
- ☐ gender/sex
- ☐ religion
- ☐ national origin
- ☑ age *(year of birth)*    1943    *(only when asserting a claim of age discrimination.)*
- ☐ disability or perceived disability *(specify disability)*

E.    The facts of my case are as follows.  Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

See attached statement

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.    Exhaustion of Federal Administrative Remedies

A.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*
February 11, 2015

B.    The Equal Employment Opportunity Commission *(check one)*:

☐    has not issued a Notice of Right to Sue letter.

☑    issued a Notice of Right to Sue letter, which I received on *(date)*    11/06/2020    .

*(Note:  Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.    Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☑    60 days or more have elapsed.

☐    less than 60 days have elapsed.

## V.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

See attached statement

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.        For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:         11/06/2020

Signature of Plaintiff

Printed Name of Plaintiff        Douglas E. Robinson

### B.        For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

Douglas E. Robinson
P.O. Box 335
Pinole, CA 94564
(310) 681-3474
*dtangoking@gmail.com*

Plaintiff

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

Douglas E. Robinson,

        Plaintiff,

vs.

MICHAEL J. RIGAS, Acting Director, US
OFFICE OF PERSONNEL
MANAGEMENT, and DOES 1 to 10,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.:

**ATTACHMENT TO COMPLAINT
FOR EMPLOYMENT
DISCRIMINATION**

Plaintiff, DOUGLAS E. ROBINSON, submits the following attachment to the Complaint for Employment Discrimination, as follows:

**I.**
## Attachment to Paragraphs 1A-B
(The parties to this Complaint)

Plaintiff
Plaintiff is an African-American male born September 17, 1943.

Defendants

Defendant, United States Office of Personnel Management (hereinafter "OPM"), is an official agency of the United States Government, and serves as the chief human resources agency and personnel policy manager for the Federal Government. At all material times alleged in this Complaint, the acts and omissions on the part of OPM employees were done within the scope of his or her OPM agency or employment.

1

Defendants' Workforce Profile

During defendant's fiscal year ("FY") 2011-14, defendant's HR workforce profile consisted of 33 employees, of whom 24 identify themselves as Caucasian, 8 identify themselves as Black or African-American, and 1 who identifies himself as Asian. In addition, of defendant's 33 employees, only 2 employees were age 60 or older (of whom plaintiff is one).

| Grade | Number of Employees | Description | Age | Race |
|---|---|---|---|---|
| GS-15 | 1 | HR Strategy Group Manager (Jason Parman) | Under 40 | Caucasian |
| GS-14 | 3 | Supervisory HR Specialists | Under 40 | Caucasian |
| GS-13 | 23 | HR Specialists and 1 HR Management Analyst | Under 40 | 1 Asian 3 Black 20 Caucasian |
| GS-12 | 3 | HR Specialists (includes Plaintiff) | Plaintiff over 40 | Black |
| GS-09 | 1 | HR Assistant | Under 40 | Caucasian |
| GS-07 | 2 | Administrative Assistants | Under 40 | Caucasian |

DOE Defendants

The true names and capacities of the defendants named herein as Does 1 through 10, inclusive, whether individual, corporate, associate, or otherwise are currently unknown to plaintiff. Plaintiff therefore alleges that each of the fictitiously named defendants is responsible in some manner for the events sued upon. Plaintiff will seek leave of this court to amend the complaint to assert the true names and capacities of the defendants named herein as Does 1 through 10, inclusive, when said names and capacities have been ascertained.

## II.
## Attachment to Paragraph 1C
(Place of Employment)

Plaintiff was hired by defendant into a developmental position as a Human Resource Specialist GS-12/13 grade. Although plaintiff changed his position in 2010,

2

plaintiff's duty title did not change, and his responsibilities remained essentially the same. At the time of his hire, plaintiff was considered a full-time teleworker operating out of his home in Pinole, California, however, plaintiff used the HRS San Francisco Service Center located at 90 Seventh Street, Suite 13-300, San Francisco, CA 94103, for administrative and technical support.

At the time of his hire in 2006, plaintiff was not instructed on his duty to report suspected discrete acts of discrimination, or on the distinction between discrete acts of discrimination and either pattern or practice discrimination or discrimination resulting in an ongoing hostile work environment. At no time after his hire by defendant OPM was plaintiff advised of his duty to report suspected discrimination under either federal law of the defendant's policy.

Based on information and belief, during all relevant times set forth in this complaint, defendants employed approximately 33 full-time HR Specialists, and approximately 10 were hired in developmental positions like plaintiff.

## III.
## Attachment to Paragraph III
(Statement of the Claim)

Failure to Promote

The acts complained of in this suit concern a failure to promote me, a failure to provide career development assignments, disparate treatment, hostile work environment and retaliation because of discrimination based on my race and age.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a)(1).

The employer is also prohibited "from retaliating against an applicant for employment because the applicant has opposed any unlawful employment practice, or has made a charge, testified, assisted, or participated in an employment discrimination investigation or proceeding." Lam v. Univ. of Hawai'i, 40 F.3d 1551, 1558-59 (9th Cir.1994) (citing 42 U.S.C. §2000e-3(a)).

3

Furthermore, pursuant to 29 U.S.C. §206, *et. seq.*, the employer is prohibited from discriminating against me by giving lower wages based on my age.

In this case, defendants hired plaintiff in a career development position that was accompanied by defendants' promise that after performing in the position for a year with a "Fully Successful" annual performance evaluation, that plaintiff would be promoted from a Grade 12 in plaintiff's position as a Human Resource Specialist GS-0201, to a Grade 13.

As a Human Resource Specialist, plaintiff's duties consisted primarily of (i) conducting organizational reviews and management analysis of a client's business operations, (ii) developing position descriptions, revisions and re-descriptions, (iii) conducting on-site or virtual position desk audits, (iv) developing comprehensive, summary and standardized position evaluation statements, and (v) providing Human Resources advisory consultative for various federal and state agencies.

Plaintiff was never shown or given a policy or procedure regarding promotion criteria or standards of performance for his developmental position by his acting manager, Michelle Acara, at the time of plaintiff's hire. Based on information that plaintiff was able to glean from defendants' custom and practice, and belief thereon, the promotion criteria for a career development position is (i) 12 months of experience in the current development position, and (ii) at least "Satisfactory" performance at the current grade level.

During the fiscal years from 2011 through 2014 in which plaintiff was not promoted, plaintiff observed several similarly situated Caucasian employees get promoted in career development positions. In fiscal year 2013, one Caucasian employee, Jason Hohman, was given a career ladder promotion despite not having performed his career development position for an entire year. In fiscal year 2011, another similarly situated Caucasian employee, Yvonne Ryan, was promoted after receiving a "Satisfactory" annual performance evaluation, while plaintiff did not get a promotion during that same fiscal year despite having earned an "Exceeds Fully Successful" annual performance evaluation. In fiscal year 2013, another similarly situated Caucasian employee, Laura Knowles, was promoted to plaintiff's first-line supervisor, despite that

4

first-line supervisor having no actual experience in performing or evaluating the tasks performed by plaintiff.

Moreover, during fiscal years 2011 through 2014, unlike other similarly situated Caucasian employees like Jason Hohman, plaintiff was not given the lead role on several complex assignments that he was capable of satisfactorily performing, yet plaintiff was made to perform a substantial portion of the complex tasks on those assignments.

Further, during fiscal years 2011 through 2014, at least one Caucasian employee, Jason Hohman, was given preferential treatment by having retired annuitants assigned to Hohman's projects, thereby allowing Hohman to complete larger and more complex assignments, and to complete his projects in less time. Plaintiff was not given retired annuitants to assist on any project for which plaintiff served as lead.

During fiscal years 2011 through 2014, plaintiff served as instructor for a Classification Course offered by the defendant Agency, in which the defendant Agency promoted plaintiff as a "Classification Expert".

Also, during fiscal years 2011 through 2014, plaintiff served on a panel that selected Administrative Law Judges, a distinction that was only given to HR Specialists whom the defendant Agency regarded as "expert" classifiers.

During a portion of fiscal year 2013 and for the entirety of fiscal year 2014, Michelle Acara was unavailable to perform as plaintiff's first-line supervisor while she was on extended medical leave. Thus, at the end of fiscal year 2013 when plaintiff asked for a promotion, there was no person sufficiently familiar with the quality of plaintiff's work to assess the promotion request. Ultimately, during fiscal year 2014, Jason Parman represented to plaintiff that Parman would consider plaintiff for a career ladder promotion in his position after considering the input of all HR Specialists serving as plaintiff's acting manager during the absence of Michelle Acara. Despite Parman's representation to plaintiff, Jason Parman made a material misrepresentation of fact to plaintiff that the reason for his failure to promote plaintiff at the end of fiscal year 2014, is that all acting managers opined that plaintiff was not promotion ready. In fact, several unbiased acting managers opined that plaintiff was promotion ready and had been so for quite some time.

During FY 2011 through FY 2014, defendant promoted 13 similarly situated employees from GS-12 to GS-13, of whom only 1 is Black or African-American, and none of whom are over the age of 50 years.

Defendants have engaged in a systemic pattern or practice of employment discrimination based on race since October 1, 2011.

Unequal Terms and Conditions of Employment

Defendant provided unequal terms and conditions for plaintiff's employment by, *inter alia*, allowing Caucasian employees to receive assistance of retired annuitants, and assigning Caucasian employees the lead role on major projects for career development.

Retaliation

Defendants retaliated against plaintiff's complaint of discrimination with respect to the failure to promote, by embarking on a concerted campaign to fabricate a poor performance evaluation to justify plaintiff not being promoted. Defendants engaged in a common plan, motivated at least in part by race, for Jason Parman, Laura Knowles, Yvonne Ryan and Michelle Acara to misrepresent the quality of plaintiff's performance to deny plaintiff's promotion from grade GS-12 to GS-13.

Other Acts

Defendants also transmitted knowingly false documents through interstate commerce for the purpose of intentionally misrepresenting facts to the Equal Employment Opportunity Commission (E.E.O.C.).

In addition, the following material facts are not disputed:

1. Plaintiff had no active first-line supervisor for the first two months of FY 2014 (i.e., Oct. – Nov. 2013) because Michelle Acara was absent due to maternity and extended sick leave. Nevertheless, during these first two months, plaintiff received no negative feedback from an acting supervisor. [ROI, ***Exhibit H***, p. 2, ¶4; ***Exhibit J***, p. 4, ¶8].

2. All temporary first-line supervisors who directly engaged with plaintiff in his assignments during the first three quarters of FY 2014 rated his performance as "***Fully Successful***" which is prerequisite to promotion. The Plaintiff's acting supervisors during FY 2014: Yvonne Ryan (Dec. 2013 – Jan. 2014); Firooz Basri (Jan. – Feb. 2014); Morris Blakely (Feb. – April 2014); Rachelle Booth (April – May 2014). Although

Attachment to Complaint for damages

Jason Parman stated under oath that Blakely and Booth rated the Plaintiff as "minimally Satisfactory", Blakely and Booth actually rated the Plaintiff's work as "Fully Satisfactory" or higher. [ROI, *Exhibits K, L, M, N*]

3. Plaintiff did not receive negative feedback from any temporary first-line supervisor (Ryan, Basri, Blakely or Booth) from Dec. 2013 through May 2014, nevertheless, Parman gave Plaintiff a *"Minimally Satisfactory"* mid-year rating. [ROI, *Exhibit J*, p. 7, ¶8d; and *Exhibits K, L, M, N*]

4. Jason Parman manifested an intent to hire and promote individuals sharing his unique cultural values, to the exclusion of plaintiff, and demonstrated a causal connection between *discriminatory animus* and adverse employment action by *misrepresenting* the mid-year appraisals of temporary first-line supervisors Morris Blakely and Yvonne Ryan [ROI, *Exhibit J*, p. 6, ¶8c]

5. During last 4 months of FY 2014 (May-September 2014), plaintiff received negative feedback from novice temporary first-line supervisor Laura Knowles, nevertheless Parman gave Knowles' performance rating "controlling weight" *despite her lack of experience in a supervisory role, and lack of technical background sufficient to fairly evaluate Plaintiff's performance*; thus there is a connection between Parman's discriminatory animus and his failure to promote Plaintiff by this pretextual reliance on Knowles' evaluation [ROI, *Exhibit M*, p. 7, ¶11]

6. Plaintiff never received a Standard of Performance to alert him of the objective criteria by which his FY 2014 annual performance would be rated. Specifically, Plaintiff was not alerted that unsubstantiated and unreliable hearsay of Agency and non-Agency personnel, that Plaintiff did not have the right to challenge, would be used to downwardly rate his performance. [ROI, Exhibit J, p. 5, ¶8b; *Exhibit G*, pp. 1-8]

7. Jason Parman imposed additional criteria to the federal career-ladder promotion scheme on Plaintiff, but not on similarly situated non-Class Agency employees, such as: (i) requiring Plaintiff to demonstrate knowledge, skills and ability (KSA's) to perform the job at the next grade level [ROI, *Exhibit J*, p. 9] whereas a non-class member was promoted by Parman without demonstrating KSA's to perform at the GS-13 grade [ROI, *Exhibit N*, p. 1]; (ii) requiring Plaintiff manage a large value project whereas a similarly situated non-Class Agency employee (Jason Hohman) was

promoted to the GS-13 grade without managing a project of that large dollar value [ROI, *Exhibit L*, p. 7]

and

8. Jason Parman appraised the quality of Plaintiff's work in FY 2011 as "Exceeds Fully Satisfactory" and in FY 2012 as "*Fully Satisfactory*". Then, without explanation, Parman depicts Plaintiff in FY 2014 as the weakest and poorest performing employee in the entire HR Division, despite the fact that each and every temporary first-line supervisor working directly with Plaintiff in FY 2014 opined that Plaintiff was performing at least "Fully Satisfactory" and in some instances, performing at the higher GS-13 grade.

## IV.
### Attachment to Paragraph IV
(Exhaustion of Administrative Remedies)

To establish federal subject matter jurisdiction, a plaintiff is required to exhaust his or her administrative remedies before seeking adjudication of a Title VII claim. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir.2002); EEOC *v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir.1994).   Exhaustion of administrative remedies under Title VII requires that the plaintiff file a timely charge with the EEOC, thereby allowing the agency time to investigate the charge.   See 42 U.S.C. §2000e-5(b); see also *B.K.B.*, 276 F.3d at 1099.[4]

On November 7, 2014, plaintiff contacted the Agency's EEO to report employment discrimination. During the initial interview, plaintiff alleged that discriminatory conduct had occurred from October 1, 2011 through and including October 31, 2014.  Plaintiff's final EEO interview occurred on January 28, 2015.

On February 11, 2015, plaintiff filed an OPM Formal EEO Complaint Form, alleging employment discrimination based on race and age had occurred from October 1, 2011 through and including October 31, 2014.

On February 25, 2015, the Agency issued a partial acceptance of the claim, advising that it would only investigate claims surrounding a discrete act that occurred on September 30, 2014.  Thereafter, the Agency rejected the claim, upon which the plaintiff filed a timely request for hearing before an Administrative Judge.

On January 11, 2016, the Chief Administrative Judge reinstated the previously dismissed claims dating back to FY 2011 in a written order dated January 12, 2016. The written order stated that the Agency had a specified amount of time in which to appeal the reinstatement, as well as a dispositive motion.

The case was ultimately assigned to a different Administrative Judge, Kendra Howard, who inexplicably abandoned her role as a neutral fact-finder by counseling and advising defendant Agency to file an untimely dispositive motion. Ultimately, despite plaintiff's vociferous objections, on April 26, 2018 Administrative Judge Howard granted the Agency's dispositive motion.

The Agency failed to issue Final Agency Decision ("FAD") pursuant to 29 C.F.R. 1614.401(a). Ordinarily, the Agency will file a FAD within forty (40) calendar days of the EEOC ALJ's separate Decisions dated April 26, 2018. However, in this case, the Agency did not file a FAD. Because the Agency failed to make a FAD during the ensuing 40-day period, the Administrative Judge's decision was deemed ratified, and the plaintiff was entitled to Appeal that decision within 30 days *after* the expiration of the 40-day ratification period. [See, 29 C.F.R. §1614.109(i), and §1614.402(a)].

Plaintiff filed a timely appeal on June 14, 2018.

On August 6, 2020, the Office of Field Operations issued a decision affirming the Administrative Judge's order dismissing the case based on no finding of discrimination.

This case was filed within ninety (90) days after receipt of notice of the Field Office decision to affirm the Administrative Judge's decision to dismiss without a hearing.

## VI.
## TIMELINESS OF CLAIM

In this case, the Agency failed to meet its burden of exploring the underlying facts for the Plaintiff's delay in reporting FY 2011-13 claims, to determine whether it should have extend the 45-day period. Rather, in its March 14, 2018 Motion for Reconsideration, the Agency failed to supply evidence to support its contention that Plaintiff had been advised of the deadlines under 29 C.F.R. §1614.105(a).

9

The evidence submitted by the Agency to support its contention that Plaintiff had been advised of the deadlines under 29 C.F.R. §1614.105(a) were objected to by Plaintiff as unreliable hearsay and lacking personal knowledge [Fed.R.Evid., Rule 602, 802]. Specifically, neither Alicia Jones nor James Robinson, the Agency's supporting declarants, have personal knowledge that Plaintiff received notice or training by the Agency under 29 C.F.R. §1614.105(a).

## VII.
## PROCEDURAL BACKGROUND

On November 7, 2014, Plaintiff initially sought EEO Counseling, alleging that, beginning in Fiscal Year ("FY") 2011, the Agency discriminated against him on the basis of race (African-American) and age (born: September 17, 1943), in its refusal to promote Plaintiff to the GS-13 level. The matter was not resolved during counseling.

On February 12, 2014, Plaintiff filed a formal complaint against the Agency alleging discrimination on the basis of race, color, sex, national origin and age, in its refusal to promote Plaintiff dating back to FY 2011.

On February 25, 2015, the Agency issued a partial acceptance letter. The Agency dismissed claims dating back to FY 2011, FY 2012, and FY 2013, stating that the Plaintiff did not seek EEO counseling within 45 days of discrete acts that are alleged to have occurred in FY 2011-13. The Agency accepted the claim of whether the Plaintiff was discriminated against on the basis of race (African-American) and age (born: September 17, 1943), when on September 30, 2014, it failed to promote the Plaintiff to the GS-13 level. Plaintiff disputed the Agency's dismissal of claims covering FY 2011-13. Thereafter, the Agency conducted an investigation.

On June 1, 2015, the Agency produced Report of Investigation ("ROI"). The ROI does not contain evidence that the Plaintiff had been advised by the Agency of a duty to report discrete acts of discrimination within forty-five (45) days of occurrence, and the ROI does not contain evidence that the Agency advised Plaintiff of a distinction between discrete acts of discrimination and ongoing hostile work environment claims, the latter of which require EEO contact within forty-five (45) days of the last occurrence of ongoing workplace harassment. In fact, plaintiff had not been advised by the Agency of a

10

duty to report discrete acts of discrimination within forty-five (45) days of occurrence, and plaintiff did not sign a document acknowledging that he had been advised of such duty to report. Specifically, neither Alicia Jones nor James Robinson, the Agency's supporting declarants, have personal knowledge that Plaintiff actually received notice or training by the Agency under 29 C.F.R. §1614.105(a).

Instead, Jones and Robinson each offered generalized custom/habit testimony of EEO training new Agency employees effective 2009. It is undisputed that Plaintiff was hired in 2006, prior to Jones' and Robinson's tenure as an OPM employee [ROI, Exhibit G, p. 1], that there is no document proving Plaintiff was trained of the deadlines under 29 C.F.R. §1614.105(a), and that neither Jones nor Robinson could state under oath he or she has personal knowledge that Plaintiff was so advised.

## VIII.
## PRAYER FOR RELIEF

Based on the foregoing abuse of discretion, it is respectfully requested that:

1. All damages sustained as a result of defendants' conduct, including damages for emotional distress, humiliation, embarrassment, and anguish, loss of earnings, back pay, and loss of earning capacity according to proof;

2. Exemplary and punitive damages in an amount commensurate with defendants' ability to pay and to deter future conduct;

3. Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

4. Pre-judgment and post-judgment interest, as provided by law; and

5. Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

*I declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct based on my personal knowledge and belief, and that this declaration was executed this 6th day of November 2020 at Castro Valley, California.*

Douglas E. Robinson, Plaintiff

///

11



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P.O. Box 77960**
**Washington, DC 20013**

Douglas E. Robinson, a/k/a
Art B.,[1]
Complainant,

v.

Michael J. Rigas,
Acting Director,
Office of Personnel Management,
Agency.

Appeal No. 0120182172

Hearing No. 550-2015-00343X

Agency No. 2015014

DECISION

On June 14, 2018, Complainant filed an appeal with the Equal Employment Opportunity Commission (EEOC or Commission), pursuant to 29 C.F.R. § 1614.403(a), from the Agency's July 9, 2018, final order concerning his equal employment opportunity (EEO) complaint alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq. and the Age Discrimination in Employment Act of 1967 (ADEA), as amended, 29 U.S.C. § 621 et seq. For the following reasons, the Commission AFFIRMS the Agency's final order.

ISSUE PRESENTED

The issue presented is whether the Agency subjected Complainant to discrimination when it failed to promote him to the GS-13 level on September 30, 2014.

BACKGROUND

At the time of events giving rise to this complaint, Complainant worked as a Human Resources Specialist, GS-0201-12, at the Agency's Kansas City Services Center (Human Resources Solutions) in Kansas City, Missouri.

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

2                                                     0120182172

Complainant filed an EEO complaint on February 12, 2015, alleging that the Agency discriminated against him on the bases of race (African-American), sex (male), color (black), and age (over 40) when on September 30, 2011, September 30, 2012, September 30, 2013, and September 30, 2014, the Agency failed to promote him to the GS-13 level.[2]

On February 25, 2015, the Agency issued Complainant a Notice of Partial Acceptance, advising him that it would only investigate the September 30, 2014, incident because Complainant failed to timely raise the other incidents in accordance with 29 C.F.R. § 1614.105(a)(1). At the conclusion of the investigation, the Agency provided Complainant with a copy of the report of investigation and notice of his right to request a hearing before an Equal Employment Opportunity Commission Administrative Judge (AJ). Complainant timely requested a hearing.

On January 11, 2016, the Chief AJ who was initially assigned to the case held an initial conference with the parties to discuss timelines for discovery and dispositive motions. At such time, the Chief AJ verbally reinstated the dismissed claims. The following day, the Chief AJ issued a written order confirming the reinstatement. See Order on Initial Conference and Deadlines and Record Completion, dated January 12, 2016. The matter was then reassigned to another AJ.

Following months of unsuccessful settlement negotiations, the Agency filed a motion for reconsideration on March 14, 2018, in which the Agency petitioned the newly assigned AJ to reverse the Chief AJ's order to reinstate the dismissed claims. Over Complainant's objections, the AJ granted the Agency's motion on March 20, 2018, because the incidents of non-promotion in 2011, 2012, 2013, were beyond the 45-day time limit, and Complainant offered no justification for his untimely EEO Counselor contact. In granting the Agency's motion, the AJ also encouraged the Agency to file a motion for a decision without a hearing because the only claim at issue involved a fiscal year where Complainant had been rated too low to be promoted. On March 21, 2018, Complainant requested reconsideration of the AJ's decision to grant the Agency's motion for reconsideration; however, the AJ denied Complainant's motion on April 26, 2018.

During the pendency of Complainant's request for consideration, the Agency filed a motion for decision without a hearing. On April 12, 2018, Complainant filed a response to the Agency's March 28, 2018 motion. Over Complainant's objections, the AJ granted the Agency's motion for a decision without a hearing and issued a decision without a hearing on April 26, 2018.
In ruling in favor of the Agency, the AJ initially considered Complainant's argument that he had direct evidence of discrimination because his second level supervisor allegedly expressed a preference for hiring employees from his alma mater because "... they have the same values as [him]... they are all alike." In this regard, Complainant maintained that this evidence showed discriminatory animus because it meant that his supervisor was looking for people who shared his cultural values and Caucasian ancestry.

---

[2] In his formal complaint, Complainant also raised national origin as a basis. However, he subsequently withdrew that basis. ROI, pg. 000063.

The AJ, however, rejected this argument because Complainant's interpretation of his supervisor's statement required assumptions that were not supported by the record, namely that his supervisor only wanted to hire Caucasians with his cultural values and that was the reason why Complainant was not promoted. The AJ concluded that Complainant failed to establish direct evidence of discrimination.

The AJ also considered whether Complainant could establish discriminatory animus through indirect evidence; however, the AJ found that the Agency had legitimate, nondiscriminatory reasons for not promoting Complainant. Specifically, the AJ found that the Agency could not promote Complainant because Complainant's "minimally satisfactory" rating for fiscal year (FY) 2014, rendered him ineligible for a career ladder promotion under 5 C.F.R. § 335.104. While the AJ acknowledged that some of Complainant's temporary first-line supervisors rated his performance as fully successful, the AJ concluded that Complainant could not establish pretext because the record clearly showed that not all of Complainant's supervisors rated him as fully successful. To the contrary, the AJ found that in addition to receiving negative ratings from supervisors, Complainant "also received negative comments related to timeliness and interactions with clients." Finally, the AJ found that the supervisor who rated Complainant as "minimally successful" used his own observations to assess Complainant. The AJ ultimately granted the Agency's motion for a decision without a hearing because the undisputed evidence showed that the Agency had legitimate, nondiscriminatory reasons for its actions, for which Complainant could not establish pretext.

When the Agency failed to issue a final order within 40 days of receipt of the AJ's decision, the AJ's decision finding that Complainant failed to prove that the Agency subjected him to discrimination as alleged became the Agency's final action pursuant to 29 C.F.R. § 1614.109(i). This appeal followed.

## CONTENTIONS ON APPEAL

Complainant's contentions on appeal are addressed in our analysis of the appeal, *infra*. The Agency requests that the Commission affirm its final order adopting the AJ's finding of no discrimination.

## STANDARD OF REVIEW

In rendering this appellate decision, we must scrutinize the AJ's legal *and* factual conclusions, and the Agency's final order adopting them, de novo. See 29 C.F.R. § 1614.405(a) (stating that a "decision on an appeal from an Agency's final action shall be based on a de novo review . . ."); see also Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), at Chap. 9, § VI.B. (Aug. 5, 2015) (providing that an administrative judge's determination to issue a decision without a hearing, and the decision itself, will both be reviewed de novo).

This essentially means that we should look at this case with fresh eyes. In other words, we are free to accept (if accurate) or reject (if erroneous) the AJ's, and Agency's, factual conclusions and legal analysis – including on the ultimate fact of whether intentional discrimination occurred, and on the legal issue of whether any federal employment discrimination statute was violated. See id. at Chapter 9, § VI.A. (explaining that the de novo standard of review "requires that the Commission examine the record without regard to the factual and legal determinations of the previous decision maker," and that EEOC "review the documents, statements, and testimony of record, including any timely and relevant submissions of the parties, and . . . issue its decision based on the Commission's own assessment of the record and its interpretation of the law").

<u>ANALYSIS AND FINDINGS</u>

We determine whether the AJ appropriately issued the decision without a hearing. The Commission's regulations allow an AJ to issue a decision without a hearing upon finding that there is no genuine issue of material fact. 29 C.F.R. § 1614.109(g). EEOC's decision without a hearing regulation follows the summary judgment procedure from federal court. Fed. R. Civ. P. 56. The U.S. Supreme Court held summary judgment is appropriate where a judge determines no genuine issue of material fact exists under the legal and evidentiary standards. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). In ruling on a summary judgment motion, the judge is to determine whether there are genuine issues for trial, as opposed to weighing the evidence. <u>Id.</u> at 249. At the summary judgment stage, the judge must believe the non-moving party's evidence and must draw justifiable inferences in the non-moving party's favor. <u>Id.</u> at 255. A "genuine issue of fact" is one that a reasonable judge could find in favor for the non-moving party. <u>Celotex v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Oliver v. Digital Equip. Corp.</u>, 846 F.2d 103, 105 (1st Cir. 1988). A "material" fact has the potential to affect the outcome of a case.

An AJ may issue a decision without a hearing only after determining that the record has been adequately developed. See <u>Petty v. Dep't of Def.</u>, EEOC Appeal No. 01A24206 (July 11, 2003). We carefully reviewed the record and find that it is adequately developed. To successfully oppose a decision without a hearing, Complainant must identify material facts of record that are in dispute or present further material evidence establishing facts in dispute.

Our review of the Agency's motion for a decision without a hearing shows that the Agency argued that it could not legally promote Complainant to the GS-13 level because the law prohibited the Agency from giving an employee a career ladder promotion unless that employee's rating of record was at least fully successful. In this regard, the Agency maintained that the undisputed evidence clearly showed that Complainant received a "minimally successful" rating during the relevant rating period, which was below the "fully successful" level needed for a career ladder promotion. The Agency further argued that the record clearly showed that Complainant's supervisor provided Complainant with ample feedback during Complainant's mid-year review on how Complainant could receive a "fully successful" annual rating; however, Complainant failed to improve his performance.

Moreover, the Agency maintained that the individuals whom Complainant named as comparators were not similarly situated to Complainant because the comparators had attained at least "fully successful" ratings when they were promoted. The Agency also maintained that these individuals were promoted prior to FY2014, the rating year in question.

In his opposition to the Agency's motion for a decision without a hearing,[3] Complainant argued that the Agency's motion was untimely and that it was not only prejudicial, but also unethical for the AJ to allow summary judgment briefing in the case. Complainant also contended that he was precluded from obtaining documents to prove estoppel and/or equitable tolling arguments.

As for the merits of his case, Complainant argued that he had direct evidence of discrimination because his second level supervisor allegedly admitted that he had gone to his old college to hire employees because "...they have the same values as [him]...they are all alike." Complainant maintained that his supervisor's statement manifested evidence of discriminatory animus because it meant that his supervisor was looking for people who shared his cultural values and Caucasian ancestry.

Complainant further maintained that he could establish discrimination through indirect evidence. In this regard, while Complainant acknowledged that his supervisor had rated him as "minimally successful," he argued that this rating was pretext for discrimination because the record showed that some of his temporary first-line supervisors had rated his performance as fully successful. Complainant also argued that the temporary first line supervisor who had rated him as minimally successful lacked experience and the technical background to assess him, even though she had supervised him the longest. Complainant asserted that it was improper for his second level supervisor to rely on feedback from this individual. Ultimately, as noted above, the AJ found no merit in Complainant's arguments, and she determined that there were no genuine issues of material fact or credibility to merit a hearing.

In reviewing the AJ's decision to grant the Agency's motion, we must draw all justifiable inferences in Complainant's favor. For the following reasons, we find that the AJ correctly determined that there were no genuine issues of material fact or credibility that merited a hearing.

*Procedural Arguments*

We will first address Complainant's procedural arguments. On appeal, Complainant again challenges the propriety of the AJ's decision to dismiss claims that a prior Chief AJ had reinstated.

---

[3] While the record does not contain Complainant's opposition to the Agency's motion for a decision without a hearing, we reconstructed Complainant's arguments using both the AJ's decision and Complainant's brief in support of his appeal. We take this opportunity to remind the Agency of its obligation to submit the full complaint file to the Commission. See 29 C.F.R § 1614.403(e).

Specifically, Complainant argues that it was an abuse of discretion for the AJ to deny his motion for reconsideration because the record clearly showed that the Agency's motion was untimely and not otherwise in accordance with Rule 60 of the Federal Rules of Civil Procedure (FRCP). Complainant asserts that the AJ abused her discretion in granting relief because the Agency failed to establish the date of reasonable suspicion or consider whether he had a valid excuse. Complainant also contends that the investigative report does not contain evidence that the Agency advised him of the distinction between discrete acts and ongoing hostile work environment claims.

After careful consideration, we find that the AJ did not abuse her discretion in granting the Agency's motion for reconsideration of the Chief AJ's order. In so finding, we acknowledge Complainant's contention that the AJ failed to adhere to Rule 60 of the FRCP; however, we note that the Commission does not strictly follow the FRCP in adjudicating federal sector EEO cases. See Obas v. Dep't of Justice, EEOC Request No. 0520110179 (Apr. 21, 2011); see also Bedynek-Stumm v. Dep't of Veterans Affairs, EEOC Request. 0520110587 (Nov. 15, 2011). Indeed, the Commission affords its AJs broad discretion to conduct hearings in accordance with the Commission's regulations and case law. Angel C. v. Soc. Sec. Adm., EEOC Appeal No. 0120172038 (Feb. 26, 2019). This discretion gives AJs significant leeway to dismiss claims *sua sponte*, even without a motion from the agency. In this case, while we are mindful that the Agency filed its motion for reconsideration approximately two years after the Chief AJ reinstated the dismissed claims, we are disinclined to find an abuse of discretion because we find that the AJ's grant of the Agency's motion had the same effect as a *sua sponte* dismissal of the claims.

Moreover, our review of the record shows that the AJ had solid legal grounds for dismissing the claims, namely that the incidents of non-promotion in 2011, 2012, and 2013, were beyond the 45-day time limit, and Complainant offered no justification for his delayed EEO Counselor contact. Our regulation at 29 C.F.R. § 1614.105(a)(1) requires complaints of discrimination to be brought to the attention of an Equal Employment Opportunity Counselor within forty-five (45) days of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within forty-five (45) days of the effective date of the action. While we agree with Complainant that this time limit is subject to waiver, tolling, and estoppel, we find no evidence that Complainant "was not counseled of his rights and 45-day EEO report[ing] duties under 29 C.F.R. § 1614.105(a)." To the contrary, affidavits from EEO Office personnel show that the Agency, as part of its customary on-boarding process, provided new employees with training on the federal-sector EEO process. Moreover, we note that the record contains training material that clearly communicates the 45-day time limit for filing EEO complaints. See Agency's Response to Complainant's Motion for Reconsideration of Order Affirming the Agency's Dismissal of Certain Claims, pgs. 11-45. For these reasons, we find that the Agency met its burden of showing that it provided training to Complainant on the federal-sector EEO process.

We also reject Complainant's contention that he did not reasonably suspect discrimination when he was not promoted in 2011, 2012, and 2013. Our review of Complainant's appellate brief fails to persuasively shed light on the basis for this argument. Given the repeated nature of the alleged discrimination, which occurred on September 30th of each year, we find that Complainant should have known about the alleged discriminatory acts.

As for Complainant's contention that the ROI fails to show that the Agency advised him of the distinction between discrete acts of discrimination and ongoing hostile work environment claims, we find this contention to be unpersuasive. In reaching this conclusion, we considered whether the Agency should have advised Complainant of the distinction, in light of Complainant's October 31, 2014, email to the EEO Office. In that email, Complainant alleged that he was being subjected to prohibited personnel practices consisting of "continuous systemic and pervasive" acts of discrimination with regard to assignments, promotions, promotional opportunities, projects, pay, and discrimination. Our review of the record shows that the Agency responded to the email by advising Complainant that such allegations were outside the purview of the EEO process. While we acknowledge the email, we find that the Agency properly treated Complainant's allegations as a complaint of prohibited personnel practices, as Complainant did not clearly raise a hostile work environment claim. To the contrary, as discussed in the AJ's "Order Denying Complainant's Motion for Reconsideration," Complainant's email clearly stated that he was raising allegations of prohibited personnel practices and there is no indication that Complainant sought clarification on how his claims should be articulated. Given the vague nature of the email, we have no concerns regarding the manner in which the EEO Office responded to the email.

Moreover, our review of the record shows that the bulk of Complainant's allegations of harassment relate to management's criticism of his work. Examples include, but are not limited to, Complainant's allegation that his supervisor threatened to put him on a performance improvement plan and made unfounded allegations that Complainant "was not doing his job." While we acknowledge these allegations, we find that such acts do not constitute harassment. See Order Denying Complainant's Motion for Reconsideration. Indeed, we have long held that ordinary workplace tribulations are not sufficiently severe or pervasive to constitute a hostile work environment. Day v. Dep't of Defense, EEOC Appeal No. 0120080938 (Mar. 30, 2012).

In conclusion, we conclude that the AJ did not abuse her discretion in granting the Agency's motion for reconsideration of the Chief AJ's order, and we have no concerns regarding the manner in which the EEO Office processed the complaint.

*Merits*

We turn now to the merits of the complaint, which concerns Complainant's allegation that the Agency unlawfully failed to promote him to the GS-13 level on September 30, 2014, due to his protected characteristics.

To prevail in a disparate-treatment claim, Complainant must satisfy the three-part evidentiary scheme fashioned by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Complainant must first establish a prima facie case by demonstrating that he was subjected to an adverse employment action under circumstances that would support an inference of discrimination. Furnco Construction Co. v. Waters, 438 U.S. 567, 576 (1978).

8                                                          0120182172

Proof of a prima facie case will vary depending on the facts of the particular case. McDonnell Douglas, 411 U.S. at 802 n. 13. The burden then shifts to the Agency to articulate a legitimate, nondiscriminatory reason for its actions. Tx. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). Complainant must ultimately prove, by a preponderance of the evidence, that the Agency's explanation is pretextual. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 519 (1993). Complainant can do this by showing that the proffered explanations are unworthy of credence or that a discriminatory reason more likely motivated the Agency. Burdine, 450 U.S. at 256. A showing that the employer's articulated reasons are not credible permits, but does not compel, a finding of discrimination. Hicks, at 511.

Assuming arguendo that Complainant can establish prima facie case of discrimination on the alleged bases, we find that the Agency has articulated legitimate, nondiscriminatory reasons for its actions. As reflected in the investigative report and the Agency's appellate brief, the Agency maintained that it could not promote Complainant because its regulation requires at minimum a "fully successful" rating to be promoted, and Complainant's rating of record was below the "fully successful" threshold.

On appeal, Complainant acknowledges that he received a "minimally satisfactory" rating for FY14; however, he disputes the underlying basis for the rating. In this regard, Complainant asserts that during the first two months of FY14, he did not receive any negative feedback from his acting supervisors and that all of his temporary first-line supervisors during the first three quarters of FY14 assessed his performance as "fully successful." Complainant maintains that while his second level supervisor stated under oath that two first-line supervisors, S1 and S2, rated him as "minimally satisfactory," the record actually reflects that these individuals rated him as "fully satisfactory" or higher.

Moreover, Complainant emphasizes that his second level supervisor gave him an "exceeds fully satisfactory" rating in FY11 and a "fully satisfactory" rating in FY12. He asserts that while his second level supervisor depicted hm as the weakest and poorest performing employee in the entire HR Division for FY14, his supervisor provided no explanation for the change and that each and every temporary first-line supervisor who worked with him in FY14 opined that he was performing at least at the "fully satisfactory" level, and in some instances, performing at the higher GS-13 grade level.

Complainant further argues that the negative feedback he received during the last four months of FY14 came from a novice temporary first-line supervisor, and he contends that his second level supervisor should not have given controlling weight to the novice supervisor's assessment. Complainant also asserts that he never received a "Standard of Performance" to alert him to the relevant standards that he would be rated under and that his second level supervisor imposed additional criteria on him regarding the federal career ladder promotion scheme but did not do the same to others.

0120182172

Here, even if we draw all justifiable inferences in Complainant's favor, we still conclude that the undisputed facts fully support the AJ's finding of no discrimination, as the record persuasively shows that the Agency had legitimate, nondiscriminatory reasons for its actions for which Complainant cannot establish pretext. While we agree with Complainant that the affidavits from both S1 and S2 demonstrate that these individuals found Complainant's performance to be "fully successful," the undisputed evidence clearly shows that other supervisors found his performance to be deficient. Specifically, we note that at least two supervisory employees other than Complainant's second level supervisor found Complainant's performance to be deficient in areas such as communication, project management, accountability, timeliness, quality, quantity, accuracy, and responsiveness to clients. ROI, pgs. 000012 and 000102.

While we understand that Complainant vehemently disagrees with the Agency's assessment of his performance, in addressing an AJ's issuance of a decision without a hearing, a complainant's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for a hearing. See Celotex, 477 U.S. at 324. We find that Complainant has failed to persuasively demonstrate pretext, as the record clearly shows that several of Complainant's supervisors, including the one who supervised him the longest,[4] voiced concerns about Complainant's performance, and despite informal and formal attempts to help Complainant improve, he failed to so.[5] ROI, Exhibit J.2.

In reaching this conclusion, we considered Complainant's comparator, CW1, whom Complainant alleges was treated more favorably than him.

---

[4] To the extent Complainant contends that the Agency should not have relied on the feedback from temporary first line supervisor S3 due to her lack of experience and technical background, we find that contention to be unpersuasive, as this individual's alleged lack of experience would have affected everyone, not just Complainant.

[5] While we recognize that Complainant received higher performance ratings in FY11 and 12, we emphasize that the Agency is under no obligation to continue giving Complainant the same performance rating as before. By Complainant's own admission, his second level supervisor informed him in April 2014, that his performance needed to improve. ROI, pg. 000065. The preponderant evidence shows that he failed to improve.

While we acknowledge that the Agency promoted this individual to the GS-13 level, but did not afford Complainant the same opportunity, we find that CW1 was not similarly situated to Complainant because the preponderant evidence fails to show that CW1 had the same deficiencies as Complainant.[6] We ultimately conclude that the AJ properly granted the Agency's motion for a decision without a hearing.[7]

## CONCLUSION

Based on a thorough review of the record and the contentions on appeal, including those not specifically addressed herein, we AFFIRM the Agency's final order affirming the AJ's finding of no discrimination.

## STATEMENT OF RIGHTS - ON APPEAL
## RECONSIDERATION (M0617)

The Commission may, in its discretion, reconsider the decision in this case if the Complainant or the Agency submits a written request containing arguments or evidence which tend to establish that:

1.    The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2.    The appellate decision will have a substantial impact on the policies, practices, or operations of the Agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision. A party shall have **twenty (20) calendar days** of receipt of another party's timely request for reconsideration in which to submit a brief or statement in opposition. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), at Chap. 9 § VII.B (Aug. 5, 2015). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission. Complainant's request may be submitted via regular mail to P.O. Box 77960, Washington, DC 20013, or by certified mail to 131 M Street, NE, Washington, DC 20507. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. See 29 C.F.R. § 1614.604. The agency's request must be submitted in digital format via the EEOC's Federal Sector EEO Portal (FedSEP). See 29 C.F.R. § 1614.403(g). The request or opposition must also include proof of service on the other party.

---

[6] We note that during the EEO investigation, Complainant alleged that the Agency treated another individual, CW2, more favorably than him. Because Complainant did not raise this contention in his appellate brief, we limit our review to the comparator discussed above.

[7] We considered the related EEO case that Complainant cited as new and material evidence; however, we find this evidence to be unpersuasive.

11                                                                            0120182172

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. See 29 C.F.R. § 1614.604(c).

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0610)

You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, **filing a civil action will terminate the administrative processing of your complaint.**

## RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests. Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:

Carlton M. Hadden, Director
Office of Federal Operations


August 6, 2020
Date

12                                          0120182172

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed.** I certify that this decision was mailed to the following recipients on the date below:

Douglas E. Robinson
PO Box 335
Pinole, CA  94564

Lamont W. Allen
22097 Redwood Road
Castro Valley, CA  94546

Lashonn Woodland, EEO Director
Equal Employment Opportunity Office
Office of Personnel Management
Via FedSEP

August 6, 2020
Date

_____
Compliance and Control Division

Reference #: 0120182172
Lamont W. Allen
22097 Redwood Road
Castro Valley, CA  94546