UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS E. ROBINSON,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. RIGAS,<br><br>    Defendant. | Case No. 20-cv-07907-JSC<br><br>**ORDER RE: MOTION TO DISMISS**<br><br>Re: Dkt. No. 13 |

Plaintiff Douglas E. Robinson, a federal employee proceeding without representation by an attorney, brings claims for employment discrimination and retaliation.[1] (Dkt. No. 1.)[2] Before the Court is Defendant's motion to dismiss on the grounds that Plaintiff's complaint was not timely served, he failed to exhaust his administrative remedies, and he fails to state a claim. (Dkt. No. 13.) The Court *sua sponte* granted Plaintiff additional time to file an opposition, and he did so. (Dkt. Nos. 14, 16.) After carefully considering the briefing, and having had the benefit of oral argument on July 22, 2021, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss for the reasons explained below.

**BACKGROUND**

**I.  Complaint Allegations**

Plaintiff is an employee of the United States Office of Personnel Management ("OPM") and teleworks full-time from his home in Pinole, California. He is an African American man and was about 68 years old when the time period at issue began. He alleges that when he was hired, in

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 5, 7.)
[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

2006, OPM did not instruct him "on his duty to report suspected discrete acts of discrimination, or on the distinction between discrete acts of discrimination and either pattern or practice discrimination or discrimination resulting in an ongoing hostile work environment." (Dkt. No. 1 at 9.)

As of 2010, Plaintiff's role was Human Resource Specialist ("HR Specialist") at the GS-12/13 grade, "a career development position that was accompanied by [OPM's] promise that after performing in the position for a year with a 'Fully Successful' annual performance evaluation, [he] would be promoted from a Grade 12 . . . to a Grade 13." (*Id.* at 8–10.) However, "Plaintiff was never shown or given a policy or procedure regarding promotion criteria or standards of performance for his developmental position by his acting manager . . . at the time of [] hire. Based on information that [P]laintiff was able to glean from [OPM's] custom and practice, and belief thereon, the promotion criteria for a career development position is (i) 12 months of experience in the current development position, and (ii) at least 'Satisfactory' performance at the current grade level." (*Id.* at 10.)

The gravamen of Plaintiff's complaint is that, despite performing well for four years, he was not promoted to Grade 13 while similarly situated white and younger employees were. During the time period at issue, fiscal years ("FY") 2011 to 2014, OPM employed 33 full-time HR Specialists, about 10 of whom were in "developmental positions." Of the 33, 24 were white, eight (including Plaintiff) were Black or African American, and one was Asian. Two employees (including Plaintiff) were age 60 or older. From FY 2011 to 2014, OPM promoted 13 employees to Grade 13, only one of whom was Black or African American and none of whom were over age 50. The highest classification in the department was Grade 15; all four HR Specialists at Grades 14 or 15 were white.

HR Strategy Group Manager Jason Parman, who is white, led Plaintiff's department. According to Plaintiff, Mr. Parman "manifested an intent to hire and promote individuals sharing his unique cultural values, to the exclusion of [P]laintiff." (*Id.* at 13.) Throughout the time period at issue, Plaintiff alleges that white employees were given preferential treatment in the form of leadership roles on complex assignments and extra staff assigned to their projects, allowing them

2

to complete their leadership projects more quickly.

In FY 2011, Plaintiff was rated "Exceeds Fully Satisfactory" by Mr. Parman and received an overall annual evaluation of "Exceeds Fully Successful." Plaintiff was not promoted, but a similarly situated white employee evaluated as "Satisfactory" was.

In FY 2012, Plaintiff was rated "Fully Satisfactory" by Mr. Parman. Plaintiff was not promoted.

In FY 2013, Plaintiff's supervisor went on leave. At the end of the year "when [P]laintiff asked for a promotion, there was no person sufficiently familiar with the quality of [P]laintiff's work to assess the promotion request," and Plaintiff was not promoted. (*Id.* at 11.) A similarly situated white employee was promoted after having been in his position for less than a year, and a similarly situated white employee was promoted to Plaintiff's supervisor without having experience in Plaintiff's position.

In FY 2014, for the first three quarters, Plaintiff had four temporary supervisors while his supervisor was on leave. All four evaluated his performance as "Fully Successful." Nevertheless, Mr. Parman rated Plaintiff "Minimally Satisfactory" on his mid-year evaluation, and in doing so misrepresented that two temporary supervisors had rated Plaintiff poorly. During the last quarter of FY 2014, Plaintiff had a temporary supervisor named Laura Knowles who gave him negative feedback. For Plaintiff's annual evaluation, Mr. Parman "gave [Ms.] Knowles' performance rating 'controlling weight' despite her lack of experience in a supervisory role, and lack of technical background sufficient to fairly evaluate Plaintiff's performance." (*Id.* at 13 (emphasis omitted).) Mr. Parman "imposed additional criteria . . . on Plaintiff," including: requiring Plaintiff, but not a similarly situated employee, to demonstrate Grade 13 knowledge, skills, and abilities prior to promotion; and requiring Plaintiff, but not a similarly situated employee, to manage a large-dollar project prior to promotion. (*Id.* at 13–14.) Plaintiff was not promoted that year.

Plaintiff brings claims for discrimination on the basis of race and age—including "failure to promote[,] failure to provide career development assignments, disparate treatment, and hostile work environment"—and retaliation. (*Id.* at 9.) He cites Title VII of the Civil Rights Act of 1964

3

("Title VII") and the Age Discrimination in Employment Act ("ADEA").[3]

## II. Procedural History

Plaintiff contacted the OPM's Equal Employment Opportunity ("EEO") office on November 7, 2014. He alleged "that discriminatory conduct had occurred from October 1, 2011 through and including October 31, 2014." (*Id.* at 14.)[4] After interviewing with the EEO office, Plaintiff filed a formal complaint on or around February 11, 2015. An administrative law judge dismissed the complaint based on a finding of no discrimination; the Office of Field Operations affirmed on August 6, 2020; and Plaintiff filed suit on November 6, 2020. (*Id.* at 28, 5.)

## DISCUSSION

Defendant moves to dismiss under Federal Rule of Civil Procedure 4(m) for failure to timely serve; for failure to exhaust administrative remedies; and under Rule 12(b)(6) for failure to state a claim.

## I. Timely Service

Plaintiff filed this action on November 6, 2020. (Dkt. No. 1.) On January 29, 2021, the Court ordered Plaintiff to serve Defendant and continued a case management conference to allow for service. (Dkt. No. 6.) Plaintiff has not yet filed proof of service, but, according to Defendant, service was completed on March 8, 2021—122 days after filing. (Dkt. No. 13 at 13–14; Dkt. No. 13-3 at 31.)

"If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate

---

[3] In one instance, Plaintiff's complaint cites the Equal Pay Act ("EPA"), (Dkt. No. 1 at 3), which prohibits employers from discriminating on the basis of sex in paying wages. 29 U.S.C. § 206(d)(1). However, he cites elsewhere only to Title VII and the ADEA, and provides no factual allegations that he was paid lower wages on the basis of sex. To the extent that Plaintiff brings a claim under the EPA, the claim is DISMISSED with leave to amend.

[4] In one instance, Plaintiff's complaint states that the discriminatory acts occurred "through Fiscal Year 2019." (Dkt. No. 1 at 4.) However, he states elsewhere that the relevant time period is October 2011 through October 2014, and alleges no facts after October 2014 other than procedural history. Therefore, the Court construes the complaint as alleging discrimination between 2011 and 2014.

4

period." Fed. R. Civ. P. 4(m). "Rule 4(m) provides two avenues for relief. The first is mandatory: the district court must extend time for service upon a showing of good cause. The second is discretionary: if good cause is not established, the district court may extend time for service upon a showing of excusable neglect. Exercise of discretion to extend time to complete service is appropriate when, for example, a statute-of-limitations bar would operate to prevent re-filing of the action." *Lemoge v. United States*, 587 F.3d 1188, 1198 (9th Cir. 2009) (citations omitted). "In making extension decisions under Rule 4(m) a district court may consider factors like a statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service." *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007) (internal quotation marks and citation omitted).

Federal employees have 90 days from receipt of notice of final administrative action to file a civil discrimination action. 42 U.S.C. § 2000e-16(c). Here, Plaintiff alleges he received notice of final administrative action on or around August 6, 2020. (Dkt. No. 1 at 28.) As such, the 90-day statute of limitations would operate to prevent refiling if the Court dismissed the complaint without prejudice. Moreover, Plaintiff did effectuate service, 32 days after the deadline. Dismissal for failure to timely serve is not warranted, especially in light of Plaintiff's unrepresented status. *See In re Sheehan*, 253 F.3d 507, 513 (9th Cir. 2001) ("Courts have discretion under Rule 4(m), absent a showing of good cause, to extend the time for service or to dismiss the action without prejudice.").

## II.    Administrative Exhaustion

### A.    Title VII

To bring a claim of discrimination under Title VII, a federal employee must timely exhaust his administrative remedies. *Leong v. Potter*, 347 F.3d 1117, 1121–22 (9th Cir. 2003). The employee "must initiate contact with a[n EEO] Counselor within 45 days of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). Failure to initiate administrative action within the 45-day time period may be "fatal" to an employee's discrimination claims in federal court, absent waiver, estoppel, or equitable tolling. *Lyons v. England*, 307 F.3d 1092, 1105 (9th Cir. 2002); *see* 29

C.F.R. § 1614.604(c); *Leong*, 347 F.3d at 1122–23.

It is presently unsettled whether Title VII's exhaustion requirement for federal employees is jurisdictional or a mandatory processing rule. The Ninth Circuit has explained, "Although failure to file an [EEO] complaint is not a complete bar to district court jurisdiction, substantial compliance with the exhaustion requirement is a jurisdictional pre-requisite." *Leong*, 347 F.3d at 1122. "[T]he jurisdictional scope of a Title VII claimant's court action depends upon the scope of both the [EEO] charge and the [EEO] investigation. The district court has jurisdiction over any charges of discrimination that are like or reasonably related to the allegations in the [EEO] charge, or that fall within the [EEO] investigation which can reasonably be expected to grow out [of] the charge of discrimination." *Sommatino v. United States*, 255 F.3d 704, 708 (9th Cir. 2001) (internal quotation marks and citations omitted). However, the Supreme Court more recently instructed that, at least as to private sector employees, Title VII's administrative exhaustion requirement is a mandatory processing rule rather than jurisdictional. *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1851 (2019). Because *Fort Bend* did not address the requirement's function as to federal employees, *see id.* at 1847 n.1, there is some uncertainty whether the Ninth Circuit's earlier holdings have survived. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) ("[W]here intervening Supreme Court authority is clearly irreconcilable with our prior circuit authority[,] . . . district courts should consider themselves bound by the intervening higher authority and reject the prior opinion of this court as having been effectively overruled."); *Williams v. Wolf*, 2019 WL 6311381, at *5–6 (N.D. Cal. Nov. 25, 2019) (analyzing jurisdictional issue in light of *Fort Bend*). Defendant argues that the requirement continues to be jurisdictional in the federal employment context, although it does not move to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

The Court need not resolve this issue. At the hearing on this motion, Plaintiff conceded that one EEO complaint, filed on November 7, 2014, is the basis for administrative exhaustion. Plaintiff contacted an EEO counselor at that time and alleged "that discriminatory conduct had occurred from October 1, 2011 through and including October 31, 2014." (Dkt. No. 1 at 14.) On its face, this contact may serve to exhaust only the discriminatory acts that occurred between

September 23, 2014 and November 7, 2014—the 45-day window that Title VII affords federal employees. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act."); *Cherosky v. Henderson*, 330 F.3d 1243, 1245–48 (9th Cir. 2003). For this reason, Plaintiff's claims as to discrete acts before September 23, 2014—including the failure to promote him in FY 2011, 2012, and 2013—were not administratively exhausted and are effectively time-barred. *See Morgan*, 536 U.S. at 114 ("Discrete acts [include] failure to promote[.]").

Administrative exhaustion also requires that the employee's claims in the EEO process be sufficiently similar to the claims brought to court. A court may consider "all claims of discrimination that fall within the scope of the [EEO]'s actual investigation or an [EEO] investigation that could reasonably be expected to grow out of the charge." *Vasquez v. City of Los Angeles,* 349 F.3d 634, 644 (9th Cir. 2003). "Civil claims [are] reasonably related to allegations in the [administrative complaint] to the extent that those claims are consistent with the plaintiff's original theory of the case." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002).

Plaintiff's administrative complaint stated,

> My complaint is that from October 1, 2011 thru the current date, I have not been promoted to GS-201-13 [sic], full performance level because of a continuous systematic pattern of employment discrimination. I am over the age of 50, and an African American male. This employment discrimination includes pay, assignments and denial of promotional opportunities for other vacancies at OPM and other federal agencies. There is a concentration of employees who are over the age of 40, African American, male and female and not being promoted. The remedy I seek is immediate promotion to the GS-13 level with all back pay from October 1, 2011 to the present with interest and all entitled benefits, and end the employment discrimination and favoritism in HR Strategies.

(Dkt. No. 13-1 at 3.)[5] Plaintiff also identified the "date(s) of the alleged discriminatory event" as

---

[5] The Court takes judicial notice of Plaintiff's administrative complaint, attached to Defendant's motion to dismiss. "[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). "Although mere mention of the existence of a document is insufficient to

7

September 30, 2011, September 30, 2012, September 30, 2013, and September 30, 2014. (*Id.* at 1.) Defendant argues that Plaintiff's administrative complaint is too vague to be construed as reasonably similar to his claims in this lawsuit. To the contrary, the administrative complaint sets out a theory that Plaintiff was not promoted from Grade 12 to Grade 13 because of his race and age, and seeks that promotion as a remedy. The administrative complaint also identifies September 30, 2014 as the date of a discrete act of discrimination, which is within the 45-day window. Thus, the only Title VII claim that is not time-barred—the failure to promote in FY 2014—is reasonably related to allegations in Plaintiff's administrative complaint. And, because the FY 2014 conduct was properly exhausted, the jurisdictional issue is moot.

### B. ADEA

The ADEA also requires administrative exhaustion. A federal employee can exhaust through the same procedure described above, with a 45-day window to contact the EEO after an alleged discriminatory act, or he may "bypass" by giving notice to the Equal Employment Opportunity Commission of the alleged discriminatory act within 180 days and notice of his intent to sue at least 30 days before doing so. *Whitman v. Mineta*, 541 F.3d 929, 932 (9th Cir. 2008); 29 U.S.C. § 633a(d). Plaintiff's ADEA claims are on par with his Title VII claims: they are exhausted only as to the failure to promote in FY 2014, a discrete act that occurred within 45 days before he contacted the EEO office.

\* \* \*

The motion to dismiss for failure to exhaust administrative remedies is DENIED as to the failure to promote in FY 2014, but GRANTED as to acts that occurred before September 23, 2014.

### III. Failure to State a Claim

A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

---

incorporate the contents of a document, the document is incorporated when its contents are described and the document is integral to the complaint." *Tunac v. United States*, 897 F.3d 1197, 1207 n.8 (9th Cir. 2018) (internal quotation marks and citation omitted). Plaintiff's complaint summarizes his February 11, 2015 EEO complaint and uses it as a basis to allege administrative exhaustion. (Dkt. No. 1 at 14.)

8

550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Mar. Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotation marks and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), under which a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."), *cert. denied*, 132 S. Ct. 2101 (2012). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663–64.

When a plaintiff proceeds without representation by an attorney, "particularly in civil rights cases," the court must "construe the pleadings liberally . . . to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (internal quotation

9

marks and citation omitted). Nevertheless, the Court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

### A. Race Discrimination Claims

Plaintiff complains of "failure to promote," "unequal terms and conditions of [] employment," "failure to provide career development assignments," "disparate treatment," and "hostile work environment," "based on my race and age." (Dkt. No. 1 at 4, 9.) Under the Title VII framework, failure to promote, unequal terms and conditions of employment, and failure to provide career development assignments are disparate treatment race discrimination claims. *See Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) ("Disparate-treatment cases present the most easily understood type of discrimination, and occur where an employer has treated a particular person less favorably than others because of a protected trait. A disparate-treatment plaintiff must establish that the defendant had a discriminatory intent or motive for taking a job-related action."). To the extent that unequal terms and conditions of employment and the failure to provide career development assignments occurred before September 23, 2014, disparate treatment claims regarding that conduct are time-barred, as discussed above. Likewise, disparate treatment claims regarding the failure to promote in FY 2011, 2012, and 2013 are time-barred. As such, the legal sufficiency of Plaintiff's disparate treatment race discrimination claim rests on the alleged failure to promote in FY 2014.

To the extent Plaintiff alleges a hostile work environment claim, the Court construes that as a separate theory of race discrimination under Title VII. *See Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000) ("A hostile work environment claim involves a workplace atmosphere so discriminatory and abusive that it unreasonably interferes with the job performance of those harassed . . . [and] alter[s] the conditions of [] employment.").

#### 1. Disparate Treatment

To establish a prima facie case of disparate treatment discrimination, a plaintiff must show: "(1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were

treated more favorably" or "other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010); *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123 (9th Cir. 2000). "While a plaintiff need not plead facts constituting all elements of a prima facie employment discrimination case in order to survive a Rule 12(b)(6) motion to dismiss, courts nevertheless look to those elements to analyze a motion to dismiss, so as to decide, in light of judicial experience and common sense, whether the challenged complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 796–97 (N.D. Cal. 2015).

The complaint satisfies elements (1) and (3); Plaintiff is an African American employee and was not promoted in FY 2014. As to element (2), the complaint sets forth specific facts to adequately allege that Plaintiff was qualified for the promotion he was denied. Defendant's argument that Plaintiff was not qualified for Grade 13 in 2014 due to his poor annual evaluation construes the complaint too narrowly. (Dkt. No. 13 at 21–22.) Rather, the complaint alleges that Plaintiff was qualified for Grade 13 because he had received good annual evaluations for several years and because most of the people who supervised him in FY 2014 gave him good ratings. Plaintiff alleges that Mr. Parman misrepresented those supervisors' ratings to give Plaintiff a "Minimally Satisfactory" mid-year evaluation. He alleges that, after Ms. Knowles gave Plaintiff negative feedback later in FY 2014, Mr. Parman gave that feedback "controlling weight" in the annual evaluation. (Dkt. No. 1 at 13.) Overall, Plaintiff contends that his FY 2014 annual evaluation held him to a higher standard than other similarly situated employees. He also alleges that, through FY 2014, he served as a classification course instructor and an administrative law judge selection panelist, and that OPM reserves such roles for "expert" HR classifiers. Accepting the factual allegations as true, the complaint adequately alleges that Plaintiff was qualified to be promoted to Grade 13.

Regarding element (4), the complaint alleges circumstances that give rise to an inference of discrimination. Although Plaintiff is time-barred from bringing claims for failure to promote in FY 2011, 2012, and 2013, the alleged conduct during those years is relevant to evaluating the legal

1    sufficiency of the alleged conduct in FY 2014.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536

2    U.S. 101, 113 (2002) ("The existence of past acts and the employee's prior knowledge of their

3    occurrence, however, does not bar employees from filing charges about related discrete acts so

4    long as the acts are independently discriminatory and charges addressing those acts are themselves

5    timely filed.  Nor does the statute bar an employee from using the prior acts as background

6    evidence in support of a timely claim.").  The complaint alleges that the department had 33 full-

7    time HR Specialists, 24 of whom were white and eight of whom were African American; the four

8    HR Specialists at the highest classifications, Grades 14 and 15, were white; 13 HR Specialists

9    were promoted to Grade 13, one of whom was African American; and neither Plaintiff's FY 2011

10   rating of "Exceeds Fully Successful" nor his FY 2012 rating of "Fully Satisfactory" led to a

11   promotion.  These specific factual allegations "nudge" an inference of discrimination "across the

12   line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.

13   Therefore, Plaintiff states a claim for race discrimination on a disparate treatment theory,

14   and the motion to dismiss as to this claim is DENIED.

### 2. Hostile Work Environment

16   To state a claim for hostile work environment on the basis of race under Title VII, a

17   plaintiff must allege that: "(1) he was subjected to verbal or physical conduct because of his race,

18   (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter

19   the conditions of his employment and create an abusive work environment.  In considering

20   whether the discriminatory conduct was severe or pervasive, we look to all the circumstances,

21   including the frequency of the discriminatory conduct; its severity; whether it is physically

22   threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes

23   with an employee's work performance."  *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d

24   1116, 1122 (9th Cir. 2008) (internal quotation marks and citations omitted).

25   The complaint falls short of this standard.  Plaintiff does not allege any remarks, physical

26   altercations, or specific interactions that might be construed as harassment.  *See id.* ("A hostile

27   work environment, by its very nature[,] involves repeated conduct.").  Nor does he allege a

28   connection between any harassing conduct and his race.  Instead, the conduct at issue is squarely

12

1  job-related: OPM's failure to promote him.  Therefore, the Court GRANTS without prejudice

2  Defendant's motion to dismiss the hostile work environment claim.

### B. Age Discrimination Claim

To state a claim for age discrimination under the ADEA, a plaintiff must allege that he was: "(1) at least forty years old, (2) qualified for the position for which an application was submitted, (3) denied the position, and (4) the promotion was given to a substantially younger person." *Shelley v. Geren*, 666 F.3d 899, 608 (9th Cir. 2012).

Plaintiff satisfies elements (1) and (3); he was around 71 years old in FY 2014 and was denied a promotion.  For the reasons discussed above, the complaint adequately alleges element (2), that Plaintiff was qualified for a promotion to Grade 13.  However, element (4) is lacking.  The complaint does not identify other, substantially younger employees who were promoted in FY 2014.  Nor do the surrounding circumstances—only one other employee in the department was over 60, and no employees under 50 were promoted to Grade 13—plausibly give rise to an inference of discrimination.  Therefore, the Court GRANTS without prejudice Defendant's motion to dismiss the age discrimination claim.

### C. Retaliation Claim

To state a claim for retaliation under Title VII or the ADEA, a plaintiff must allege that: (1) "[]he engaged in a protected activity"; (2) his employer "subjected [him] to an adverse employment action"; and (3) there is a causal link "between the protected activity and the adverse action." *Poland v. Chertoff*, 494 F.3d 1174, 1179–80, 1180 n.1 (9th Cir. 2007).  Plaintiff alleges that OPM "retaliated against [P]laintiff's complaint of discrimination with respect to the failure to promote, by embarking on a concerted campaign to fabricate a poor performance evaluation to justify [P]laintiff not being promoted.  Defendants engaged in a common plan, motivated at least in part by race, for Jason Parman, Laura Knowles, Yvonne Ryan and Michelle Acara to misrepresent the quality of [P]laintiff's performance to deny [P]laintiff's promotion from [G]rade GS-12 to GS-13." (Dkt. No. 1 at 12.)

The complaint adequately alleges elements (1) and (2).  Initiating the EEO process, which Plaintiff did on November 7, 2014, and filing a formal administrative complaint, which he did on

February 11, 2015, are protected activity under Title VII and the ADEA. *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). OPM's failure to promote Plaintiff in FY 2011, 2012, 2013, and 2014 are adverse employment actions. *Id.* ("Among those employment decisions that can constitute an adverse employment action are termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion."). However, because the adverse actions occurred before Plaintiff engaged in protected activity, the complaint does not allege the required causal link. *See Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731 n.1 (9th Cir. 1986) ("[A]n employer who had already decided upon a course of action adverse to the plaintiff prior to learning of the plaintiff's protected activity did not intend to retaliate."). Plaintiff does not allege any protected activity, such as formal or informal complaints of discrimination, prior to the dates when he was denied promotion each year. Nor does he identify any adverse actions after he contacted the EEO office on November 7, 2014. Therefore, the complaint fails to state a claim for retaliation under either Title VII or the ADEA. The Court GRANTS without prejudice Defendant's motion to dismiss the retaliation claim.

## IV.     Punitive Damages

The complaint includes a request for punitive damages. Punitive damages are only available under Title VII against private sector employers, 42 U.S.C. § 1981a(b)(1); *see Terry v. Ashcroft*, 336 F.3d 128, 153 (2d Cir. 2003), and are not available under the ADEA, *Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F.3d 1051, 1059 (9th Cir. 2009). Therefore, the Court GRANTS the motion to dismiss as to punitive damages. Because such damages are not available to Plaintiff as a matter of law, amendment would be futile and the dismissal is with prejudice. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).

## CONCLUSION

For the reasons explained above, the motion to dismiss is DENIED with respect to Rule 4(m). The motion is GRANTED in PART with respect to failure to exhaust administrative remedies, as to time-barred conduct that occurred before September 23, 2014. With respect to failure to state a claim, the motion is DENIED as to disparate treatment race discrimination, but

14

GRANTED as to hostile work environment, age discrimination, and retaliation. The motion is GRANTED as to punitive damages.

In summary:

1. Plaintiff may proceed with his claim for disparate treatment race discrimination under Title VII, regarding the failure to promote in FY 2014.

2. Plaintiff's claims for hostile work environment, age discrimination, and retaliation are DISMISSED with leave to amend.

3. Plaintiff's request for punitive damages is DISMISSED with prejudice.

4. Plaintiff is granted leave to amend the claims for hostile work environment, age discrimination, and retaliation if he believes he can allege facts that plausibly state a claim for relief. He may not add any new claims (as opposed to amended claims) without first seeking the Court's permission. A First Amended Complaint, if any, shall be filed by **August 23, 2021**. If Plaintiff does not file a First Amended Complaint by that date, the case will proceed only on the race discrimination disparate treatment claim arising from the FY 2014 failure to promote.

5. The initial case management conference scheduled for August 5, 2021 is continued to **September 30, 2021** at 1:30 p.m. If Plaintiff files a First Amended Complaint and Defendant moves to dismiss, this conference date may be continued. The Court once again encourages Plaintiff to seek free assistance from the Northern District's Legal Help Center, 450 Golden Gate Avenue, 15th Floor, Room 2796, San Francisco, CA 94102. In light of the ongoing COVID-19 pandemic, Plaintiff should make a telephone appointment by calling (415) 782-8982.

This Order disposes of Docket No. 13.

**IT IS SO ORDERED.**

Dated: July 22, 2021

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge