UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS E. ROBINSON,<br><br>    Plaintiff,<br><br>    v.<br><br>KIRAN AHUJA,<br><br>    Defendant. | Case No. 20-cv-07907-JSC<br><br>**ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 55 |

Douglas Robinson, a former federal employee, brings claims for employment discrimination on the basis of race and age arising from Defendant's failure to promote him to a GS-13 grade in fiscal year 2014. (Dkt. No. 20.)[1] Before the Court is Defendant's motion for summary judgment. (Dkt. No. 55.) Having carefully considered the briefing, and with the benefit of oral argument on December 15, 2022, the Court GRANTS the motion. Based on the summary judgment record, no reasonable trier of fact could find that Mr. Robinson qualified for the promotion or that he was not promoted because of his race or age.

**FACTUAL BACKGROUND**

Mr. Robinson was an employee of the United States Office of Personnel Management ("OPM") who teleworked full-time from his home in Pinole, California. As of 2010, Mr. Robinson's role was Human Resource Specialist at the GS-12 grade. (Dkt. No. 55-2 at 11; Dkt. No. 60 ¶ 2.) Mr. Robinson is an African American man and was in his late sixties during the time period at issue.

The "full performance level" for Mr. Robinson's job was GS-13. An employee could

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

advance to the full performance level through "career ladder promotions." (Dkt. No. 56-6 at 2; *see* Dkt. No. 56 ¶ 3.) Career ladder promotions were non-competitive, meaning that every employee in the job could be promoted to GS-13 if they met the requirements; one employee's promotion would not impact their coworkers' eligibility for promotion. (Dkt. No. 56 ¶ 18.) 5 C.F.R. § 335.104 and the OPM Human Resources Handbook set out the requirements for a career ladder promotion. (*Id.* ¶ 3.) In particular:

> No employee shall receive a career ladder promotion unless his or her current rating of record under part 430 of this chapter is "Fully Successful" (level 3) or higher. In addition, no employee may receive a career ladder promotion who has a rating below "Fully Successful" on a critical element that is also critical to performance at the next higher grade of the career ladder.

5 C.F.R. § 335.104; (*see* Dkt. No. 56-2 at 7–8, 10; Dkt. No. 56-6 at 8.) Thus, a career ladder promotion required an employee to be rated "Fully Successful" or higher on both his overall annual performance appraisal and on each "critical element" of his current grade that was also a critical element of the next grade.[2] In FY 2014, the critical elements for GS-12 were "Writing/Written Communication, Oral Communication/Speaking, Teamwork, Customer Service, Technical Competence, Work Accomplishment, Problem Solving, [and] Financial Accountability." (Dkt. No. 56-5 at 1; Dkt. No. 57 ¶ 9; *see* Dkt. No. 55-2 at 31–33.) Those were also critical elements of GS-13. (Dkt. No. 56 ¶ 3.) According to Mr. Robinson, during his orientation he was not given a written job description or advised of specific performance standards. (Dkt. No. 60 ¶¶ 5–6, 17.) But he reviewed his annual performance appraisals and discussed them with his supervisors. (Dkt. No. 55-2 at 23, 36; *see* Dkt. No. 60 ¶ 11 (Mr. Robinson understood that a rating of "Fully Successful" or higher was required for the GS-13 promotion).)

In FY 2011, Mr. Robinson's supervisor rated him "Exceeds Fully Successful" overall. (Dkt. No. 55-4 at 1; *see* Dkt. No. 56 ¶ 5.) The comments noted:

> You've done a great job with some tough clients. Keep up the hard work into this next year[.] Communicate more with me on your project and resources needs, continue to work towards meeting your

---

[2] The ratings scale was Outstanding, Exceeds Fully Successful, Fully Successful, Minimally Satisfactory, and Unsatisfactory. (*See* Dkt. No. 55-4 at 1.)

2

deadlines and moving your projects forward, utilize your resources to their fullest extent, and continue to communicate closely with your clients.

(Dkt. No. 55-4 at 1.)

In FY 2012, Mr. Robinson's supervisor rated him "Fully Successful" overall. (Dkt. No. 55-5 at 2; *see* Dkt. No. 56 ¶ 5.)

> Even though Doug received two minimally satisfactory ratings, I have increased his overall rating to fully successful. . . . The primary reason the rating has been raised is that even though Doug received negative feedback from a major client, the client was very difficult to work with and often times refused to respond to Doug's requests. Additionally, Doug learned and worked with very limited and unique classification guidance . . . . Finally, Doug received high marks for his technical competency and problem solving skills. However, Doug needs to watch his timeliness and take an active rol[e] in learning the financial responsibilities of a project lead and manager. . . . Technically, Doug is excellent as a GS-12. Administratively, Doug needs to work to meet the requirements of his GS-12 position.

(Dkt. No. 55-5 at 2.) Mr. Robinson was rated "Minimally Satisfactory" on the elements of "Work Accomplishment" ("Timeliness has been an issue") and "Financial Accountability" ("Multiple billing mistakes"). (*Id.* at 9, 11.)

In FY 2013, Mr. Robinson's new supervisor Michelle Arcara rated him "Minimally Satisfactory" overall. (Dkt. No. 55-6 at 1.)

> A rating of minimally satisfactory on one or more critical elements results in an overall rating of minimally satisfactory. Work accomplishment continues to be an issue. Based on feedback from the final quarter of the FY, and direct observation, it is evident that timeliness is an issue, as is quality. The quality of the actions produced by Doug is not that of a GS-12. All other critical factors were fully successful or higher. Just need Doug to complete his assignments, in a timely manner and of consistent quality.

(*Id.*) Mr. Robinson was rated "Minimally Satisfactory" on the element of "Work Accomplishment" ("timeliness and quality were issues on multiple occasions"). (*Id.* at 7.)

In FY 2014, Mr. Robinson and others in his role had eight different acting supervisors, some for as few as two weeks, due to Ms. Arcara taking a leave. (Dkt. No. 56 ¶ 4; *see* Dkt. No. 60 ¶¶ 11–12; Dkt. No. 61 ¶ 4.) HR Strategy Group Manager Jason Parman conducted Mr. Robinson's performance appraisals based on input and ratings from his acting supervisors. (Dkt.

3

No. 56 ¶ 6; Dkt. No. 61 at 6.) For the mid-year review in April 2014, Mr. Parman considered the ratings that five acting supervisors had given Mr. Robinson—three "Minimally Satisfactory," one "Fully Successful," and one "Exceeds Fully Successful"—in proportion to the length of time each had supervised him. (Dkt. No. 56 ¶ 9; Dkt. No. 56-3 at 1; Dkt. No. 61 ¶ 6.)[3] Mr. Parman did not ask them specifically about whether Mr. Robinson should be promoted to GS-13. (Dkt. No. 60 ¶¶ 12, 14–16; Dkt. No. 61 ¶¶ 8–10, 15.) Mr. Parman also considered monthly utilization reports (showing Mr. Robinson's ratio of billable hours to overall work time), twice-yearly customer surveys, and his own observations. (Dkt. No. 56 ¶¶ 8, 11.) At the mid-year review, Mr. Parman told Mr. Robinson that he rated his performance "Minimally Satisfactory." (*Id.* ¶ 7.)

Laura Knowles took over as Mr. Robinson's acting supervisor after the mid-year review and supervised him for the longest period of time in FY 2014. (*Id.* ¶ 10.) Plaintiff attests:

> Morale was low because of Knowles' 120-day temporary detail [as supervisor]; experienced Black HR Specialists consisting of Rachelle Booth and Morris Blakely[] knew the detail was a prelude of promoting Knowles to the position of our permanent first-line supervisor, a position in which Blakely and Booth were interested in filling. In addition, other Black HR Specialists such as me and Delton York were wary that Knowles was incapable of providing career guidance or unwilling to give career-ladder promotion opportunities.

(Dkt. No. 60 ¶ 13.) At some point, Mr. Robinson "and a similarly situated class member expressed frustration that Knowles would not be able to help us achieve a career-ladder promotion because of her sheer lack of knowledge of the technical requirements of the job." (*Id.* ¶ 14.) "Knowles burst into tears, to which Parman threatened [Mr. Robinson] and other similarly situated employees by making it clear that Parman had the power to place or remove anyone wherever he wanted within the organization." (*Id.*)

For the annual review in September 2014, Mr. Parman added the rating that acting supervisor Ms. Knowles had given Mr. Robinson since the mid-year review—"Minimally

---

[3] According to Mr. Robinson, Morris Blakely did not rate him "Minimally Satisfactory" in FY 2014. (Dkt. No. 60 ¶ 20.) Mr. Blakely supervised Mr. Robinson for 12.5 percent of FY 2014, (Dkt. No. 56 ¶ 10), a proportion too small to control Mr. Robinson's overall rating, (*see id.* ¶ 14 n.1).

4

Satisfactory"—in proportion to the length of time she had supervised him.  (Dkt. No. 56 ¶ 10; Dkt. No. 56-3 at 2.)  Mr. Parman considered two requests from customers that Mr. Robinson be taken off their projects due to poor performance.  (Dkt. No. 56 ¶ 12.)[4]  Mr. Parman considered the utilization report showing that Mr. Robinson had a rate of 33 percent, the lowest in the department (range of 38 to 77 percent).  (*Id.* ¶ 13; Dkt. No. 56-4 at 1.)  Mr. Parman ultimately rated Mr. Robinson "Minimally Satisfactory" overall.  (Dkt. No. 56 ¶¶ 7–8, 12–13.)  He rated Mr. Robinson "Minimally Satisfactory" on the elements of "Teamwork," "Technical Competence," "Work Accomplishment," and "Financial Accountability," and "Unacceptable" on the element of "Customer Service."  (*Id.* ¶ 13; Dkt. No. 56-3 at 4–9.)  Because Mr. Robinson was rated "Minimally Satisfactory" both overall and on several critical elements of the GS-12 position, he was not eligible for promotion to GS-13 in FY 2014.  (Dkt. No. 56 ¶¶ 14–15.)  He was not promoted in FY 2014.

Mr. Robinson observed Mr. Parman make "a hostile and inappropriate statement at the workplace which caused me to believe that he was only interested in hiring and promoting Caucasian employees."  (Dkt. No. 60 ¶ 19.)

> It was obvious to me that Mr. Parman was recruiting only Caucasian applicants from Missouri State University[, his alma mater].  During my tenure, I was not aware of a single Black applicant recruited by Mr. Parman from MSU.  Therefore, when Mr. Parman stated that the MSU recruits are "... all like me ...", it was obvious he was speaking of race.  If Mr. Parman wanted to dispel any doubts about his intent in hiring and recruiting from MSU, he failed to make that clear to the Black HR Specialists to whom he was speaking.

(*Id.*; *see* Dkt. No. 61 ¶ 14.)  Mr. Robinson also observed that Mr. Parman and OPM favored employees in the Kansas City area and awarded them more promotions.  (Dkt. No. 55-2 at 34, 40–41.)

Mr. Robinson identified a white coworker, Jason Hohman, who was promoted to GS-13.  (Dkt. No. 60 ¶ 18; *see* Dkt. No. 61 ¶ 13.)  Ms. Arcara attests that she recommended Mr. Hohman for promotion in FY 2013 and that his performance had been at least "Fully Successful."  (Dkt.

---

[4] According to Mr. Robinson, clients did not give negative feedback about him to Mr. Parman.  (Dkt. No. 60 ¶ 21.)

No. 55-3 at 8.) According to Mr. Robinson, Mr. Hohman was promoted in FY 2014 while Ms. Arcara was on leave, and he was evaluated by Mr. Parman rather than by all his acting supervisors. (Dkt. No. 60 ¶ 18.) "To the extent Mr. Hohman was not required to be in the position of HR Specialist for at least one year . . . , [he] received preferential treatment," (*id.*; *see* Dkt. No. 56 ¶ 17); however, Ms. Arcara attests that Mr. Hohman had been in the position for at least one year and therefore met the "time in grade" requirement for promotion, (Dkt. No. 55-3 at 8).

## DISCUSSION

### I. Evidentiary Issues

Mr. Robinson's objections to Defendant's evidence are DENIED. (Dkt. No. 59.) Although they are improperly raised in a standalone filing rather than in the body of his opposition, *see* N.D. Cal. Civ. L.R. 7-3(a), the Court considered Mr. Robinson's objections. But the evidence is relevant, not more prejudicial than probative, based on personal knowledge, and otherwise complies with Federal Rules of Evidence 106, 401, 403, 602, 801, and 901.

Defendant's objections to Mr. Robinson's evidence are DENIED as moot. (Dkt. No. 67 at 7–11.) Even if the Court considers Mr. Robinson's evidence, Defendant is entitled to summary judgment, as explained below.

### II. Disparate Treatment Claims

Mr. Robinson brings claims for disparate treatment race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and age discrimination under the Age Discrimination in Employment Act ("ADEA"). Both claims arise from the FY 2014 failure to promote. (*See* Dkt. No. 30 at 8.)

At summary judgment, the burden-shifting framework applies to both claims. *See Shelley v. Geren*, 666 F.3d 599, 607–08 (9th Cir. 2012); *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005). First, to establish a prima facie case of disparate treatment discrimination, a plaintiff must show: "(1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action," such as failure to promote; and "(4) similarly situated individuals outside his protected class were treated more favorably" or

6

1  "other circumstances surrounding the adverse employment action give rise to an inference of
2  discrimination." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010); *Chuang v.*
3  *Univ. of Cal. Davis*, 225 F.3d 1115, 1123 (9th Cir. 2000); *see Shelley*, 666 F.3d at 608. "At
4  summary judgment, the degree of proof necessary to establish a prima facie case is minimal and
5  does not even need to rise to the level of a preponderance of the evidence." *Dominguez-Curry*,
6  424 F.3d at 1037 (cleaned up).

7  If the plaintiff establishes a prima facie case, the burden of production shifts to the
8  employer to offer a legitimate, non-discriminatory reason for the adverse employment action. *See*
9  *Shelley*, 666 F.3d at 608; *Dominguez-Curry*, 424 F.3d at 1037. If the employer meets its burden,
10  the burden of persuasion shifts back to the plaintiff to establish that the employer's legitimate,
11  non-discriminatory reason is pretext. *See Shelley*, 666 F.3d at 608; *Dominguez-Curry*, 424 F.3d at
12  1037. At trial, a plaintiff must carry a different burden for disparate treatment claims under Title
13  VII and the ADEA. He must prove that race was at least "a motivating factor" in the adverse
14  employment action, but that age was the "but-for" cause of the adverse employment action. *See*
15  *Shelley*, 666 F.3d at 607–08. In either case, the ultimate question is whether a reasonable trier of
16  fact could find he was not promoted because of his age or race. *See* 29 U.S.C. § 623(a)(1); 42
17  U.S.C. § 2000e-2(a)(1).

18  Defendant moves for summary judgment on the grounds that a reasonable trier of fact
19  could not find Mr. Robinson was qualified for the promotion or that the circumstances give rise to
20  an inference of discrimination. Defendant also moves on the grounds that even if Mr. Robinson
21  can establish a prima facie case, a reasonable trier of fact would be compelled to find that
22  Defendant had a legitimate, non-discriminatory reason for not promoting Mr. Robinson and the
23  reasonable trier of fact could not find that reason was pretext.

24  **A.  Prima Facie Case**

25  Based on the allegations in Mr. Robinson's complaint, there is an interplay between the
26  second and fourth elements of his prima facie case. He alleges he was qualified for the GS-13
27  promotion notwithstanding his FY 2014 annual performance appraisal because the appraisal was
28  biased and inaccurate, giving rise to an inference of discrimination. Thus, the Court analyzes the

second and fourth elements together.  *See Shelley*, 666 F.3d at 608; *Hawn*, 615 F.3d at 1156; *Chuang*, 225 F.3d at 1123.

There is insufficient evidence in the record from which a reasonable trier of fact could conclude that, on paper, Mr. Robinson met the stated requirements for the GS-13 promotion.  It is undisputed that promotion to GS-13 required an employee to be rated "Fully Successful" or higher on both his overall annual performance appraisal and on each critical element of GS-12.  It is also undisputed that, in FY 2014, Mr. Robinson was rated less than "Fully Successful" on his overall appraisal and on five critical elements of GS-12.  Defendant's promotion policies were formal and there is no evidence supporting an inference that they bent the rules, for example by promoting others who were rated less than "Fully Successful."  *Cf. Lyons v. England*, 307 F.3d 1092, 1114 (9th Cir. 2002) ("[W]here, as here, the employer has not published the qualifications for positions that were awarded without a competitive application process, it would be unreasonable to require a plaintiff to present direct evidence of the actual job qualifications as part of his *prima facie* case."); *Chuang*, 225 F.3d at 1125 (concluding plaintiff met prima facie burden to establish he was qualified, where plaintiff did not have experience in human genetics but at least one person who had been promoted also did not have such experience).  Thus, as a matter of law Mr. Robinson did not, on paper, meet the stated requirements for the promotion he sought.  *See Romo v. Spring Window Fashions*, No. CVN040079HDMVPC, 2005 WL 8161892, at *3 (D. Nev. Nov. 23, 2005), *aff'd sub nom. Romo v. Springs Window Fashions Div., Inc.*, 263 F. App'x 640 (9th Cir. 2008) (concluding plaintiff did not meet prima facie burden to establish she was qualified, where plaintiff undisputedly did not have the computer skills required in the promotion listing).

There is also insufficient evidence from which a reasonable trier of fact could conclude that similarly situated individuals outside Mr. Robinson's protected classes were treated more favorably.  *See Hawn*, 615 F.3d at 1156.  Mr. Robinson identifies Mr. Hohman as a similarly situated individual who was white and younger than 40 years old.  The record supports an inference that Mr. Hohman was outside Mr. Robinson's protected classes and was treated more favorably by being promoted to GS-13.  But the record does not support an inference that Mr. Hohman was similarly situated to Mr. Robinson because Mr. Hohman was rated "Fully

Successful" or higher and thus met the stated requirements for the promotion. Mr. Robinson's speculation that Mr. Hohman might not have been required to be an HR Specialist for one year, and therefore was given preferential treatment, is contradicted by the actual evidence in the record that Mr. Hohman met all the requirements for promotion, including the "time in grade."

Moreover, there is insufficient evidence from which a reasonable trier of fact could conclude that "other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Chuang*, 225 F.3d at 1123. Specifically, there is insufficient evidence from which a reasonable trier of fact could conclude that Mr. Robinson was rated less than "Fully Successful" *because of* his race or age. Nothing in the record suggests, for example, that Mr. Robinson's supervisors referred to his race or age explicitly or implicitly in their appraisals. (Likewise, nothing in the record suggests that Mr. Hohman's appraisals referred to his race or age.) Nor does the record suggest that employees who performed similarly to Mr. Robinson in some way received a higher rating than he did. Instead, the record evidence is that Mr. Robinson's FY 2014 appraisal echoed concerns that had been raised in previous years, by different supervisors. Mr. Robinson's belief that Mr. Parman was only interested in hiring applicants from Missouri State University who were Caucasian like himself, and that Mr. Parman favored employees in the Kansas City area, is insufficient to support a reasonable inference that Mr. Robinson's composite FY 2014 ratings were because of his race or age.

Mr. Robinson's other arguments are insufficient to create a genuine dispute of fact for several reasons. First, "an employee's subjective personal judgments of [his] competence alone do not raise a genuine issue of material fact." *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996); *see Lyons*, 307 F.3d at 1115 ("[A]t summary judgment, a plaintiff's self-assessment of his performance is relevant in satisfying his minimal burden of showing qualification at the initial, *prima facie* case, stage . . . . While we do not rely on this evidence alone, we note it as relevant in combination with the other circumstantial evidence of qualification." (cleaned up)). Second, that Mr. Robinson served as an instructor for OPM's Human Resources Solutions' Training on Demand Program and as an evaluator for OPM's Administrative Law Judge Program Office, (Dkt. No. 60 ¶¶ 8–10), is insufficient to support an

inference that he was qualified for the GS-13 promotion. There is insufficient evidence in the record to support an inference that those appointments correspond with the critical elements of GS-12 and GS-13 on which Mr. Robinson was rated less than "Fully Successful." (*See* Dkt. No. 56 ¶ 13.) Thus, those appointments are not circumstantial evidence of qualification that, combined with Mr. Robinson's self-assessment of his performance, could satisfy his prima facie burden to show he was qualified. *See Lyons*, 307 F.3d at 1115.

Third, Mr. Robinson's unsupported allegation that Mr. Parman gave Ms. Knowles' negative rating controlling weight is contradicted by the record; Mr. Parman weighted the acting supervisors' ratings in proportion to the length of time each had supervised Mr. Robinson.

Fourth, at oral argument Mr. Robinson asserted that Yvonne Ryan was a similarly situated individual who was treated more favorably. However, neither his opposition nor the record evidence discusses Ms. Ryan as a potential comparator. She appears only as one of Mr. Robinson's acting supervisors; her race, age, and favorable treatment are not explained. Thus, Mr. Robinson's argument does not create a genuine dispute of fact.

Finally, Mr. Robinson's argument that Mr. Parman fabricated evidence as part of the equal employment opportunity investigation process is not sufficiently supported by admissible evidence. Mr. Robinson argues that Mr. Parman "knowingly submitted a spreadsheet on which he represented that all acting managers opined that [Mr. Robinson] was not promotion ready in FY2014." (Dkt. No. 58.) The spreadsheet has a line titled "Robinson, Douglas E." followed by Mr. Robinson's acting supervisors' ratings: "Morris – MS," "Michelle – MS," "Rachelle – FS," "Firooz – EFS," and "Yvonne – MS." (Dkt. No. 56-3 at 1.) The Court infers that MS means "Minimally Satisfactory," FS means "Fully Successful," and EFS means "Exceeds Fully Successful." The spreadsheet next has a line titled "Robinson, Douglas E. – Promotion Ready?" followed by: "Morris – No," "Michelle – No," "Rachelle – No," "Firooz – No," and "Yvonne – No." (*Id.*) There is no other admissible evidence in the record about what this line means. Mr. Robinson's own declaration is not admissible for this purpose because it is not based on personal knowledge; in any case, it does not help to explain what the spreadsheet line means. (*See* Dkt. No. 60 ¶¶ 12, 14–16.)

\* \* \*

Because there is insufficient evidence in the record from which a reasonable trier of fact could conclude Mr. Robinson was "qualified" for a GS-13 promotion, that a similarly situated individual outside his protected classes was treated more favorably, or that the circumstances give rise to an inference of discrimination, he cannot meet his prima facie burden.  *See Lyons*, 307 F.3d at 1113 ("A plaintiff's failure to offer evidence establishing a necessary element of his *prima facie* case will ordinarily be fatal to his claim.").  Accordingly, Defendant is entitled to summary judgment on both Mr. Robinson's Title VII race discrimination claim and ADEA age discrimination claim.  *See Shelley*, 666 F.3d at 608; *Dominguez-Curry*, 424 F.3d at 1037.

## CONCLUSION

Defendant's motion for summary judgment is GRANTED.

This Order disposes of Docket No. 55.

**IT IS SO ORDERED.**

Dated: December 16, 2022

JACQUELINE SCOTT CORLEY
United States District Judge